NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JAMES O'LEARY, <br><br> Plaintiff, <br><br> v. <br><br> SALOMON SMITH BARNEY, INC.,, <br><br> Defendant. | Civ. No. 05-6016 (GEB) <br><br> **MEMORANDUM OPINION** |

**BROWN, Chief Judge**

    This matter comes before the Court upon motion by James O'Leary ("Plaintiff") for an Order Vacating the Award of a FINRA Arbitration Panel Pursuant to the Federal Arbitration Act (Docket No. 21). The Court, having considered the parties' submissions and having decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78, and for the reasons discussed below, will deny Plaintiff's motion.

**I.    BACKGROUND**

    On or about October 15, 1987, Plaintiff was hired by Salomon Smith Barney ("Defendant") to work as a stockbroker in Defendant's branch office in Red Bank, New Jersey. (Compl., ¶ 2,3). In or about the time the invitation for employment by Defendant and acceptance of said employment by Plaintiff occurred, both parties entered into a "uniform securities industry, pre-dispute agreement" which contained language binding the parties to arbitrate "any dispute, claim or controversy that may arise between [Plaintiff] and [Defendant] . . ." *Id.* at ¶ 3.

    Plaintiff remained employed with Defendant through February 4, 2001, when Plaintiff suffered a bicycle accident "which resulted in significant brain damage." *Id.* at ¶ 8. Plaintiff returned to work after a four month period of convalescence. *Id.* at ¶ 10. Thereafter, Plaintiff began to experience "difficulties focusing and processing certain information, and would

sometimes fall asleep at his desk." *Id.* at ¶ 11.  Plaintiff also engaged in disruptive behavior by arguing loudly with his wife on the phone during business hours and, as a result of such behavior, Plaintiff was moved from his office on the second floor to an office on the first floor so that he could be under additional supervision.  (Hrg. Tr. at 1317:2-20, attached as Exh. A to Certif. of Kevin B. Walker, Esq. ("Walker Certif."))

Plaintiff was also arrested a total nine times from 1984 through 2004.  (Arrest Record for James O'Leary, Walker Certif., Exh. F).  Plaintiff failed to report each of these arrests as he was required to do under Defendant's disclosure policy, which enables Defendant to comply with its reporting obligation to the National Association of Securities Dealers, Inc. ("NASD")  and the New York Stock Exchange. (Hrg. Tr. at 380:2-17; 1271:11-73:8, 1278:5-81:8, 1296:6-98:17;1933:15-22, 1938:20-39:10, Walker Certif., Exh. A; Employee Handbook at 9, Walker Certif., Exh. E).  In response to these infractions, Defendant issued to Plaintiff a Letter of Education on December 3, 2002 and a Letter of Caution on June 30, 2003. (Walker Certif., Exhs. K, M).  Eventually, on or about July 1, 2004, Plaintiff's employment was terminated by Defendant. Compl. at ¶ 6.

On December 1, 2005, Plaintiff filed a one-count Complaint in the New Jersey Superior Court, Monmouth County, alleging wrongful termination by Defendant in violation of the provisions of the Americans with Disabilities Act ("ADA"), and seeking to have the New Jersey Superior Court compel arbitration pursuant to the employment agreement entered into by the parties in 1987. On December 28, 2005, Defendant removed the matter to this Court. (Docket No. 1).  On April 15, 2006, Plaintiff filed a Motion for Leave to File a First Amended Complaint on April 15, 2006 and a Motion to Remand to Superior Court of New Jersey, Law Division, Monmouth County. (Docket Nos. 8, 9).  On April 21, 2006, Defendant filed a Motion to Compel Arbitration and Stay the Proceeding.  (Docket No. 10).  On July 6, 2006, the Court issued a Memorandum Opinion and Order denying Plaintiff's motions and granting Defendant's motion. (Docket Nos. 17, 18).

On January 4, 2006, Plaintiff filed for arbitration before NASD asserting the wrongful termination claims asserted in his Complaint. (Def.'s Motion to Compel at 3 (Docket No. 10)). Defendant consented to the arbitration by answering Plaintiff's Statement of Claim on April 4, 2006. *Id.* The arbitration hearing ("Hearing") commenced on December 5, 2006, lasted approximately eleven days and included the presentation of approximately thirteen witnesses. (Walker Certif., ¶ 3). At the conclusion of the Hearing, the arbitration panel ("Panel"), without issuing a formal written opinion, denied Plaintiff's claims in their entirety ("Arbitration Award"). (FINRA Dispute Resol. Award at 2, attached as Exh. 1 to Certif. of Dan A Druz). Plaintiff filed the instant motion on June 16, 2008. (Docket No. 21).

## II.    DISCUSSION

### A.    Standard of Review

Section 10 of the Federal Arbitration Act ("FAA"), provides that the district court may only vacate an arbitrator's award:

> (1) where [it] was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators . . . ;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. "District courts have very little authority to upset arbitrators' awards." *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995); *see also Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 261 F. Supp 832, 835 (D.N.J. 1966) ("It is the general rule that the courts will refuse to review the merits of an arbitration award."), *aff'd* 397 F.2d 594 (3d Cir. 1968) (citations omitted).

In this Circuit, it has generally been the rule that "[o]nly when an arbitrator [has] 'acted in manifest disregard of the law, or if the record before the arbitrator reveals no support whatsoever for the arbitrator's determination,' may a district court invade the province of the arbitrator." *United Transp. Union Local 1589*, 514 F.3d at 380 (quoting *United Indus. Workers v. Gov't of*

*the Virgin Islands*, 987 F.2d 162, 170 (3d Cir. 1993)); *see also News Am. Publ'ns, Inc. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir. 1990) ("[O]nly where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.") (citations and internal quotations omitted).

However, Defendant argues it "believes that where the Third Circuit has in the past permitted review of arbitration awards for manifest disregard of the law, it will no longer do so" based upon the United States Supreme Court's holding in *Hall Street Assocs., LLC v. Mattel, Inc.,* 128 S.Ct. 1396 (2008). Def.'s Resp. at 23.  In that case, although it was not directly at issue, the Court addressed the "manifest disregard" doctrine and its scope under *Wilko v. Swan*, 346 U.S. 427 (1953).  *Hall Street*, 128 S.Ct. at 1403.  The Court noted that the "*Wilko* Court . . . remarked (citing FAA § 10) that '[p]ower to vacate an [arbitration] award is limited,' . . . and went on to say that 'the interpretations of the law by the arbitrators in contrast to manifest disregard [of the law] are not subject, in the federal courts, to judicial review for error in interpretation,'" *Id.* at 1403 (citing *Wilko*, 346 U.S. at 436-37).

The Court rejected petitioner's argument that this statement "recognized a 'manifest disregard of the law' as a further ground for vacatur on top of those listed in § 10," *Hall Street* 128 S.Ct. at 1403 (citations omitted).  Instead, the Court posited

> Maybe the term "manifest disregard" was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively rather than adding to them . . . . Or, as some courts have thought, "manifest disregard" may have been shorthand for § 10(a)(3) or § 10(a)(4), the subsections authorizing vacatur when the arbitrators were "guilty of misconduct" or "exceeded their powers."

*Id.* at 1404 (citations omitted).

The Court, however, did not resolve the question of how the "manifest disregard" doctrine interacts with § 10 of the FAA, and so in the wake of this decision, courts have come to various conclusions regarding *Hall Street's* impact on the "manifest disregard" doctrine.  *See*

4

*Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, No. 06-3474, 2008 U.S. App. LEXIS 22838 at *23 (2nd Cir. August 8, 2008) (noting some courts have "concluded or suggested that the doctrine simply does not survive" (citing *Ramos-Santiago v. United Parcel Service*, 524 F.3d 120, 124 n.3 (1st Cir. 2008); *Robert Lewis Rosen Assocs., Ltd. v. Webb*, 566 F.Supp.2d 228, 233 (S.D.N.Y. 2008); *Prime Therapeutics LLC v. Omnicare, Inc.*, 555 F. Supp. 2d 993, 999 (D. Minn. 2008); *Hereford v. D.R. Horton, Inc.*, No. 1070396, 2008 Ala. LEXIS 186, *12-*13 (Ala. Sept. 5, 2008)) while others think the doctrine has been "reconceptualized as a judicial gloss on the specific grounds for vacatur enumerated in section 10 of the FAA," and so remains a valid basis on which to vacate arbitration awards. (citing *MasTec N. Am., Inc.* v. *MSE Power Sys.*, No. 08-168, 2008 U.S. Dist. LEXIS 52205, at *8-9 (N.D.N.Y. July 8, 2008); *Chase Bank USA, N.A. v. Hale*, 859 N.Y.S.2d 342, 349 (N.Y. Sup. Ct. 2008)).

As Defendant correctly notes, the United States Court of Appeals for the Third Circuit has yet to rule on how *Hall Street* affects the "manifest disregard" doctrine. Def.'s Resp. at 22-23. However, this Court need not reach a conclusion regarding how *Hall Street* may impact the "manifest disregard" doctrine in this Circuit. The issue is immaterial to the instant case as Plaintiff has failed to prove that the Panel's decision should be disturbed under either Section 10 of the FAA or the "manifest disregard" doctrine.

### B. The Arbitration Award Did Not Violate Section 10 of the FAA

As previously noted, a district court may vacate an arbitration award pursuant to the FAA if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). "In other words, an arbitrator may not venture beyond the bounds of his or her authority." *Matteson v. Ryder Sys.*, 99 F.3d 108, 112 (3d Cir. 1996) (citing *United Steelworkers of Am. v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597-98 (1960)). The authority of the arbitrator is defined by both the arbitration agreement and the parties submissions; as such "an arbitrator has the authority to decide only the issues actually submitted." *Matteson*, 99 F.3d at 112-13 (citing *Sun*

5

*Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 62 (3d Cir. 1986); *United Parcel Serv., Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., Local Union No. 439*, 55 F.3d 138, 142 (3d Cir. 1995) (An [arbitration] award will, of course, be enforceable only to the extent it does not exceed the scope of the parties' submission."); *United Steelworkers*, 363 U.S. at 598 (upholding an arbitration award but implying that were the award "beyond the submission" it would have been vacated)).

However, Plaintiff does not argue that the Panel exceeded its authority by deciding issues that are beyond the scope of the Arbitration Agreement and the parties' submissions. Plaintiff argues that vacatur of the Arbitration Award is appropriate because the Panel "exceeded its powers" by "disregarding the law" as set forth in *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296 (3d Cir. 2001), which Plaintiff asserts "required the Panel to rule in [Plaintiff's] favor." Pl.'s Rep. at 4. This is not an appropriate ground for vacatur under Section 10(a)(4) of the FAA. *See Matteson.*, 99 F.3d at 112-13 (citations omitted); *accord Metromedia Energy, Inc. v. Enserch Energy Servs.*, 409 F.3d 574, 578-79 (3d Cir. 2005); *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 279-80 (3d Cir. 2004).

### C. The Panel Did Not Commit a Manifest Disregard of the Law in Denying Plaintiff's Claims

"The 'manifest disregard of the law' doctrine is a judicially-created one that is to be used 'only [in] those exceedingly rare circumstances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the [vacatur] provisions of the [FAA] apply.' *Black Box Corp. v. Markham*, 127 Fed. Appx. 22, 25 (3d Cir. 2005) (citations omitted); *see also Westra Constr., Inc. v. United States Fid. & Guar. Co.*, No. 03-0833, 2007, U.S. Dist. LEXIS 23402, at *10-11 (M.D. Pa. Mar. 29, 2007) ("To establish that an arbitrator manifestly disregarded the law, the moving party must prove that the arbitrator was 'fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it.'" (citing *Black Box Corp.*, 127 F. Appx. at 25; *Koken v. Cologne Reinsurance (Barb.) Ltd.*, No. 98-0678, 2006 U.S. Dist. LEXIS 59540, at *6 (M.D. Pa. Aug. 23, 2006) (stating that an arbitrator must have

6

ignored law that was "well defined, explicit, and clearly applicable to the case" to constitute manifest disregard of the law)).

### 1. "Regarded As" Disabled

"[I]n order for a plaintiff to establish a prima facie case of discrimination under the ADA, the plaintiff must show: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Taylor*, 184 F.3d at 306 (citing *Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998) (citing *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996)). The ADA defines disability in three ways: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." *Taylor*, 184 F.3d at 305-06 (citing 42 U.S.C. § 12102(2)) (internal quotations omitted).

Plaintiff argues that the Panel's decision constitutes a manifest disregard of the law because it failed to find that Defendant regarded Plaintiff as disabled as defined under the ADA. Pl.'s Br. at 6. "For an individual to be 'disabled' under the 'regarded as' portion of the ADA's definition of disability, the individual must demonstrate either that: (1) despite having no impairment at all, the employer erroneously believes that the plaintiff has an impairment that substantially limits major life activities; or (2) the plaintiff has a nonlimiting impairment that the employer mistakenly believes limits major life activities." *Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 512 (3d Cir. 2001) (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489, (1999)); *see also Benko v. Area Portage Sch. Dist.*, 241 Fed. Appx. 842, 847 (3d Cir. 2007). A person "regarded as having a disability" under the ADA has also been defined in this circuit as one who: "(1) [h]as a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation; (2) [h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others

toward such impairment; or (3) [h]as [no such impairment] but is treated by a covered entity as having a substantially limiting impairment." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 766 (3d Cir. 2004) (citing *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 188 (3d Cir. 1999) (quoting 29 C.F.R. § 1630.2(l))).

In light of the foregoing and the record in the instant case, the Panel did not manifestly disregard the law in determining that Defendant did not regard the Plaintiff as disabled as defined under the ADA. As support for the contrary, Plaintiff asserts that "many of [Plaintiff's] colleagues in the office urged [Plaintiff] and his wife to apply for 'long-term disability' insurance benefits under the company plan" and extrapolates that the "only reasonable inference to be drawn [from this evidence] is that [Defendant's] management believed that [Plaintiff] was disabled under the insurance policy, and in turn, under the [ADA]." Pl.'s Br. at 2, 24. That the Panel found this argument unavailing does not lead to the conclusion that, in so doing, the Panel was 'fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it.'" *Black Box Corp.,* 127 F. Appx. at 25.

Further, even assuming that Plaintiff's colleagues did believe that he was eligible for long-term disability under the Defendant's insurance policy, Plaintiff has not submitted any evidence regarding how "disability"is defined under the Defendant's insurance policy and how such a definition compares to the definition of "disability" under the ADA. Instead, Plaintiff asserts that although "[t]he definition of 'disability' under the [ADA}, and the definition in the context of a company's disability insurance policy, may not be 'legally' identical," it is reasonable to infer that the Plaintiff's colleagues who urged him to apply for long-term disability understood the term "disability" "as it is commonly used by lay persons" and that while such a definition "may not be the precise statutory meaning, it is certainly not inconsistent with ADA case law regarding 'notice', and the duties imposed upon the employer upon notification of a possibly disabling condition." Pl.'s Br. at 6. This argument is unpersuasive. As noted above. "[I]n order for a plaintiff to establish a prima facie case of discrimination under the ADA, the

plaintiff must show: "(1) he is a disabled person *within the meaning of the ADA*." *Taylor*, 184 F.3d at 306 (citations omitted) (emphasis added). In light of the foregoing, the Panel's rejection of Plaintiff's argument that Defendant regarded Plaintiff "as disabled" under the ADA does not demonstrate that the Panel manifestly disregarded the law.[1]

### III. CONCLUSION

For these reasons, Plaintiff's Motion for an Order Vacating the Award of a FINRA Arbitration Panel Pursuant to the Federal Arbitration Act (Docket No. 21). is denied. An appropriate form of order is filed herewith.

Dated: December 5, 2008

s/ Garrett E. Brown, Jr.<br>GARRETT E. BROWN, JR., U.S.D.J.

---

[1] Because the determination of whether Plaintiff is "disabled" as defined under the ADA is a threshold matter upon which all of Plaintiff's remaining arguments hinges, and Plaintiff has failed to offer a sufficient basis to disrupt the Arbitration Award on that ground, the Court does not reach Plaintiff's other such arguments.